Railroad *v.* Eanes.

## E. T. & VA. R.R. Co. *v.* EANES, Adm'r.

EVIDENCE. In an action brought by the plaintiff in error to recover damages from defendant in error for the killing of his intestate, the court allowed a statement of the facts connected with the accident, made by one of the defendant's witnesses soon after its occurrence, and printed in a newspaper, to be read to the jury, and commented on by counsel as a part of the witness's testimony, and as a contradiction of his testimony on trial of the cause going to his credit. In his charge to the jury the court withdrew from before the jury the statement so far as it had been admitted as evidence of the witness and binding on the company, but said to the jury that they might look to the printed statement as evidence so far as the same may be admitted by the witness to be correct, as part of his testimony. *Held,* that the admission of the printed statement as a part of the witness's testimony in any view, was error, for which judgment should be reversed.

### FROM SULLIVAN.

Appeal from the Circuit Court. C. J. ST. JOHN, special Judge.

BAXTER & SON for plaintiff.

W. V. DEADERICK and YORK & FULKERSON for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

Eanes, as administrator of James S. Grigsby, deceased, sued the E. T., Va. & Ga. R.R. Co. in the Circuit Court of Sullivan county for $20,000 for so negligently and carelessly running one of its passenger

trains as to run over and kill his intestate, James S. Grigsby.    Upon trial the jury found a verdict for $8,000 against the company, and judgment was rendered thereon, from which the company has appealed.

The first error relied on for a reversal is as to the admission of the testimony of witness John Slack. It is proper to state that the accident occurred about the 10th of July, 1872, near the town of Bristol. The deceased was walking on the track of the road in the direction of Bristol.    The passenger train, on its schedule time, at about $7\frac{1}{2}$ o'clock in the evening, was approaching Bristol from Chattanooga.    The engineer first saw the deceased on the road ahead of him, at the distance of about 150 or 200 yards.    At the time the engineer was blowing the "signal whistle" approaching the town.    He continued to blow the signal whistle until the train came within thirty or forty yards of the deceased, and then he blew down brakes twice, and when in about fifteen yards of deceased he reversed the engine and tried to stop the train.    It was going at about twenty miles per hour.    The deceased did not seem to pay any attention to the signal whistle, or to the whistle blowing down brakes, until the train approached within eight or ten feet of him, when he looked around and seemed to aim to get' off.    The engineer did not blow an "alarm" whistle.    This is the substance of the testimony of Tuggle, the engineer at the time of the accident, as to the circumstances immediately attending its occurrence.    He said further that he made a statement to Slack shortly after the occurrence; the paper

shown to him was something like it.  He did not say to Slack that he was within fifteen yards of deceased when he blew down brakes—did not know whether he gave Slack the very words in the paper shown him—probably he did and probably he did not. He spoke of the paper doing him injustice in stating that he did not blow down brakes till within fifteen yards of deceased.  He told the matter over to Slack, saw his publication afterward in the paper, and never went to him to have it corrected.  Witness further stated that an "alarm whistle" was a repeated succession of short, quick whistles to scare cattle; a signal whistle is a long whistle, and down brakes whistle is one short whistle.

After defendants had closed their evidence, the plaintiffs offered to read the deposition of John Slack, which was objected to, but the objection was overruled and the deposition allowed to be read.  Plaintiffs then insisted that it could only be read, if at all, to discredit the witness Tuggle; but the plaintiff's counsel insisted on reading it as an admission of defendant's agent of the facts which the printed statement contained, as well as for the purpose of discrediting Tuggle.  The court permitted it to be read for both purposes.

Slack's deposition was then read, in which he stated that at the solicitation and dictation of Tuggle, the article published in the Courier of August 29, 1872, was written by witness and published; that he read the article to Tuggle after it was prepared and before it was published, and he said it was a correct state-

ment. The article was read to the jury as part of Slack's testimony. The article is addressed "to the editor," and says: "I wish to give a plain statement of the accident, if it can be termed one, which caused the the death of Mr. Grigsby. At the time I noticed him on the track I was sounding the signal for Bristol station. He was at that time something like 150 yards in advance of the engine. Supposing he would hear the whistle, I paid but little attention to him until I was in 15 yards of him, when I changed the signal for the station to one for down brakes. I think if he had noticed the signal for down brakes he could have saved himself, but he did not notice it for a moment, when he turned and looked at the engine and started to get off, but it was too late," etc.

The testimony of Slack was given, and the newspaper article read to the jury over the objection of defendant, and they were given as evidence not only to discredit Tuggle, but also as an admission by him as agent of defendants, which woud bind the defendant. It is conceded that the testimony as an admission binding on the defendants was erroneously allowed to go to the jury; but it is insisted for plaintiff that the error was cured by the fact that the judge in his charge to the jury excluded this testimony from their consideration.

On this point the judge said to the jury, the deposition of John Slack, so far as it details admissions of the agent or employee of the company after the accident occurred, is excluded from your consideration;

Railroad *v.* Eanes.

but you may look to the printed statement (exhibit to the deposition) as evidence, so far as the same may be admitted by the witness Tuggle to be correct, as part of his testimony; and you may look to the circumstances under which such statement is made to determine the weight to be given the same.

The admissions detailed in Slack's deposition are those contained in the printed statement, made an exhibit to the deposition. They differ in some respects from the statement of facts as given by Tuggle in his testimony before the jury. This paper, as we have seen, was permitted to go to the jury as containing admissions made by Tuggle that were binding upon the company. It is stated in the bill of exceptions that "in the argument of the case the counsel for plaintiff read and commented on the newspaper slip made part of Slack's deposition as evidence of the facts connected with the killing of plaintiff's intestate, as also to discredit Tuggle."

The question is whether, after having erroneously permitted the printed paper to go to the jury as evidence of the facts connected with the killing, and after having permitted the counsel of plaintiff to treat the paper as such evidence in his argument, the mere exclusion of Slack's deposition, so far as it detailed admissions of Tuggle, after the accident, was sufficient to correct the error and to remove from the jury any impressions that might have been made by the erroneous admission of the paper, and by the argument of counsel based upon it, as competent evidence against defendants?

15—VOL. 8.

We can readily see that the statements in the paper constituted material evidence, well calculated to make a decided impression against the defendant's ·cause, especially when used by counsel in concluding argument, with the sanction of the court. If the court discussed the error before the argument was made, the correction of the error ought to have been made, by preventing the counsel from treating the evidence as competent. If the error was not discovered until the arguments were concluded, and the judge was delivering his charge, he ought then to have stated the error so explicitly as to remove from the minds of the jurors any impressions that may have been made by the erroneous admissions of the evidence, or by the comments of counsel thereon.

We are prepared to hold that it was not sufficient merely to · say to the jury, as the judge did, that "the deposition of Slack, as far as it details admissions of Tuggle, as agent, after the accident occurred, is excluded from your consideration," if he had stopped there. But the judge proceed to tell · the jury that they " may look to the printed statement as evidence so far as the same may be admitted by the witness Tuggle to be correct, as part of his testimony." But the paper had not been made part of Tuggle's testimony by him, nor had it been offered as part of his testimony by plaintiff; it was offered as testimony because it contained admissions made by Tuggle, the agent of defendant, to Slack.

We cannot see how the judge could exclude it as testimony offered by plaintiff, but admit it as part of

Tuggle's testimony, when it had neither been offered as such by either side, or admitted as such by the court, or where it had not been adopted by Tuggle as part of his testimony.

The judge proceeded further to say, "you may look to the circumstances under which such statement (the printed statement) was made, to determine the weight to be given the same." The circumstances under which the statement was made were detailed by Slack. This was after the accident, when Tuggle had no power to bind the company by his admissions. The circumstances under which he made the admissions could not be properly looked to in determining the weight to be given to the admissions, because the admissions were not competent testimony. But the judge may have meant that the circumstances might be looked to in determining the weight to be given to Tuggle's testimony. In this view the instruction may have been unobjectionable, but it is by no means clear what the true meaning of the charge is on this point. Upon the whole, we are of opinion that the charge does not sufficiently explain and correct the error in admitting the printed paper as testimony to bind defendant by Tuggle's admissions, especially as the judge permitted the jury to consider the printed statement as part of Tuggle's testimony, as far as he had admitted it to be correct. This we regard as in effect authorizing the jury to consider as evidence the same admissions which he had excluded as part of Slack's testimony.

For this error, without considering various other objections to the charge of the court, the judgment is reversed.